HONORABLE ROBERT S. LASNIK
HONORABLE J. RICHARD CREATURA

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| NICHOLAS COOPER, a Washington State citizen; and RICHARD WEINSTEIN, a Georgia citizen, | ) ) ) NO. 2:21-cv-00061-RSL-JRC |
| Plaintiffs, | ) **AMENDED COMPLAINT** ) ) **JURY DEMAND** |
| v. | ) ) |
| AGRIFY CORPORATION f/k/a AGRINAMICS CORPORATION, a Nevada corporation, | ) ) ) ) |
| Defendant. | ) ) |

Plaintiffs Nicholas Cooper and Richard Weinstein (collectively, "Plaintiffs") allege as follows:

## NATURE OF THE ACTION

Plaintiffs Cooper and Weinstein were integral employees of both TriGrow Systems, Inc. ("TriGrow") and Agrify Corporation ("Agrify"). Cooper served as TriGrow's Chief Executive Officer and Weinstein as its Chief Business Development Officer. Cooper and Weinstein merged TriGrow into Agrify after receiving repeated false promises from Agrify. Once the merger occurred and they became employees of Agrify, Cooper and Weinstein procured substantial

AMENDED COMPLAINT - 1
Case No. 2:21-cv-00061-RSL-JRC

Corr|Downs PLLC
100 WEST HARRISON STREET
SUITE N440
SEATTLE, WA 98119
206.962.5040

purchase orders and provided Agrify with significant institutional knowledge, access to key business, client and investor relationships, a robust business pipeline, sales training, and invaluable credibility in the industry.  When it came time for Agrify to fulfill the promises which induced the merger and Cooper and Weinstein's employment with Agrify, it wrongfully terminated Cooper and Weinstein in an unlawful attempt to avoid its statutory and contractual obligations.  Specifically, Agrify deprived Cooper and Weinstein of commissions and equity interests in Agrify.

## I.   JURISDICTION AND VENUE

1.      Pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1367 this Court has jurisdiction over Plaintiffs' claims as Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00.

2.      Pursuant to 28 U.S.C. § 1391(b) venue is proper in the United States District Court for the Western District of Washington.

## II.   PARTIES

3.      Plaintiff Nicholas Cooper ("Cooper") is and has been at all times material to this lawsuit a resident of Bellevue, Washington.

4.      Plaintiff Richard Weinstein ("Weinstein") is and has been at all times material to this lawsuit a resident of Atlanta, Georgia.

5.      Defendant Agrify Corporation f/k/a Agrinamics ("Agrify" or "Agrinamics")[1] is a Nevada corporation with its principal place of business at 101 Middlesex Turnpike, Suite 7, PMB 326, Burlington, Massachusetts 01803.  At all times relevant to this lawsuit, Defendant Agrify conducted business in King County, Washington.

## III.   FACTS

**A.      Background of TriGrow and Agrify.**

6.      TriGrow provided end-to-end cultivation solutions for the indoor agriculture marketplace.

---

[1] Agrinamics simply changed its name to Agrify Corporation in 2019.

AMENDED COMPLAINT - 2
Case No. 2:21-cv-00061-RSL-JRC

CORR|DOWNS PLLC
100 WEST HARRISON STREET
SUITE N440
SEATTLE, WA 98119
206.962.5040

7.     Defendant Agrify f/k/a Agrinamics was a supplier to TriGrow subject to an exclusive license agreement whereby TriGrow was the exclusive distributor.

8.     Cooper was the Chief Executive Officer and majority owner of TriGrow.

9.     Weinstein was the Chief Business Development Officer of TriGrow and, at one point, was the Chief Business Development Officer of Agrinamics.

10.     Between 2017 and May 2019, although TriGrow and Agrify f/k/a Agrinamics were legally two separate companies, they operated as one with a shared team and resources.

11.     Between 2017 and November 4, 2019, TriGrow held an exclusive license to Agrify's Intellectual Property.

12.     Between 2017 and May 30, 2019, TriGrow was indirectly responsible for, and expended substantial financial resources in, developing Agrify's hardware, software, and intellectual property, compensating employees' wages, marketing and selling Agrify's products, and cultivating clients, while Agrify held the intellectual property.

13.     On November 1, 2018, all Agrify employees were transferred to TriGrow, who continued to pay for the majority of Agrify's expenses, and TriGrow assigned any improvements to the intellectual property back to Agrify.

14.     Between 2017 and May 2019, TriGrow paid for all of Agrify's expenses, including to develop the intellectual property, with the understanding and representation from Agrify that the two companies would merge with beneficial terms for TriGrow and its stockholders.

15.     On February 7, 2019, Raymond Chang ("Chang"), through an affiliate, provided TriGrow with a lead investment term sheet for their Series A financing. Based on a recommendation from Agrify's president at the time, TriGrow did not pursue a deal with Chang. In June 2019, Agrify then accepted an investment from Agrify's current CEO Chang, through an affiliate, and stifled production to TriGrow thereby causing delays and disadvantaging TriGrow, its customers, and its stockholders.

AMENDED COMPLAINT - 3
Case No. 2:21-cv-00061-RSL-JRC

**Corr|Downs PLLC**
100 WEST HARRISON STREET
SUITE N440
SEATTLE, WA 98119
206.962.5040

16.     Agrify was enriched and obtained the benefit of TriGrow's efforts and financial resources without honoring the intent of its relationship, representations, and agreements to TriGrow.

**B.     Agrify Promises Weinstein a 5% Equity Interest in Agrify.**

17.     In September 2018, approximately sixteen months before the merger, Weinstein was in discussions with TriGrow and Agrify, then Agrinamics, about potential employment. At the time of the discussion, all employees of the two companies were technically employed by Agrify. On November 1, 2018, all Agrify employees were transferred over to TriGrow.

18.     On September 12, 2018, Agrify sent Weinstein an Employment Offer Letter which stated: "Incentive Stock Options ('ISO'): By separate agreement you will be awarded options for Common Stock shares. All terms, including the exercise price and vesting schedule, are governed by that agreement and the award is subject to approval by the Board of Directors."

19.     Following the September 12, 2018 Employment Offer, TriGrow and Agrify agreed that Weinstein would be provided 5% equity in both TriGrow and Agrify.

20.     In September 2018, Weinstein began working for Agrify. On November 1, 2018, Agrify then transferred Weinstein's employment (and all Agrify employees) to TriGrow, but he continued to work for both companies.

21.     After Weinstein began his employment, Agrify's then President Matthew Liotta continued to reaffirm Agrify's promise to provide Weinstein with a 5% equity interest in Agrify.

22.     With respect to the promise for a 5% equity interest in TriGrow, on or about January 1, 2019, TriGrow granted Weinstein a 5% equity interest via its Employee Stock Ownership Plan ("ESOP").

23.     Despite its oral promise and assurance, Agrify never provided Weinstein with a 5% (or any) equity interest in Agrify.

AMENDED COMPLAINT - 4
Case No. 2:21-cv-00061-RSL-JRC

**CORR|DOWNS PLLC**
100 WEST HARRISON STREET
SUITE N440
SEATTLE, WA 98119
206.962.5040

**C.      Agrify Acquires TriGrow Via a Reverse Merger.**

24.     On or about August 26, 2019, Agrify's current CEO Raymond Chang held a meeting with Cooper and Weinstein to discuss a potential merger.

25.     As detailed below, Agrify made several misrepresentations and promises to induce Cooper and Weinstein to agree to the merger and to accept employment with Agrify.

26.     On or about November 21, 2019, TriGrow signed the Merger Term Sheet.

27.     On or about January 17, 2020, TriGrow was sold via a reverse merger to Agrify and the merger closed ("Merger").

28.     On or about January 20, 2020, Agrify offered Cooper a position as Founder & Chief Evangelist and Weinstein a position as Vice President of Business Development with a promise that both would be provided an ESOP and commission plan.

29.     On or about January 23, 2020, both Cooper and Weinstein became employees of Agrify.

**D.      On the Eve of the Merger, Agrify Induces Weinstein to "Cancel" his TriGrow ESOP Interest Based on an Oral Promise for an Interest in Agrify Post-Merger.**

30.     While employed at TriGrow, Weinstein was granted 527,500 shares via the TriGrow ESOP, which constituted 50% of the TriGrow ESOP pool.

31.     In the event of a merger, TriGrow's employee ESOP participants were to have their interest in TriGrow fully vest.

32.     As the merger approached, Agrify told Weinstein and TriGrow's other ESOP participants that they needed to cancel and extinguish their equity interests under the ESOP to avoid purported tax liability issues.

33.     Specifically, Agrify orally represented and convinced Weinstein that if he extinguished his ESOP interest via a written agreement, Agrify would provide a grant that would "mirror" his extinguished interest in TriGrow, which worked out to a 0.5% fully diluted equity interest in Agrify.

AMENDED COMPLAINT - 5
Case No. 2:21-cv-00061-RSL-JRC

**CORR|DOWNS PLLC**
100 WEST HARRISON STREET
SUITE N440
SEATTLE, WA 98119
206.962.5040

34.     Based on Agrify's representations that the TriGrow ESOP had to be cancelled during the 2019 tax year and before the merger date, Weinstein signed a Stock Option Cancellation Agreement dated December 31, 2019.

35.     The Stock Option Cancellation Agreement expressly stated that no consideration was being provided in exchange for Weinstein's cancellation of his TriGrow ESOP interest: "…without receiving any cash, equity awards or other consideration…"

36.     Agrify's representations that it would provide an equity interest in Agrify that would "mirror" the interest Weinstein had in TriGrow were made with the intention of inducing Weinstein to sign the Stock Option Cancellation Agreement.

37.     While Weinstein executed the Stock Option Cancellation Agreement, Agrify never followed through on its promise that it would provide Weinstein with a 0.5% interest in Agrify.

**E.      In Conjunction With the Merger, Agrify Promises to Employ Weinstein Pursuant to the Terms of the Offer Letter In Exchange for Weinstein Releasing Agrify from Past Liability.**

38.     On or about January 23, 2020, as part of the Merger and in effort to protect Agrify from future claims, Agrify required Weinstein to sign a Release of Claims Agreement ("the Release") which purported to release Agrify and TriGrow from any potential liability related to Weinstein.

39.     As consideration for the Release, Agrify promised to employ Weinstein "under the terms stated in an offer letter to be provided herewith," a direct reference to the Offer Letter and Special Bonus Plan.

40.     Agrify failed to provide the promised consideration contained in the Release because it did not provide Weinstein with employment under the terms stated in the Offer Letter.

41.     On information and belief, at the time Agrify promised the consideration stated in the Release, it intended to and did induce reliance by Weinstein, but it did not have the present intention of fulfilling that promise.

AMENDED COMPLAINT - 6
Case No. 2:21-cv-00061-RSL-JRC

**F.** **To Induce Cooper and Weinstein to Accept Employment, Agrify Promises Cooper and Weinstein Commission and Equity via Offer Letter and "Special Bonus Plan."**

42.     In effort to induce Cooper and Weinstein to accept employment with Agrify, Agrify promised Cooper and Weinstein substantial commission and ESOP benefits as part of their employment with Agrify.  In their January 20, 2020 Offer Letters ("Offer Letter(s)") Agrify represented that "[a]dditional commission and ESOP agreement will be supplied within thirty (30) days of Start Date."

43.     After Weinstein pressed for more information on the terms of the commission plan, Agrify's CEO sent Cooper and Weinstein an email entitled "Special Bonus Plan" on January 23, 2020, in which Agrify's CEO clearly stated that if Cooper and Weinstein both signed their respective Offer Letters immediately (before the end of the day) Agrify would provide them with:

      43.1    1% cash commission to Cooper and Weinstein for all of Agrify's booked revenue before 6/30/2020;

      43.2    The above cash commission plan automatically extends for another six (6) months if achieving $10 million before 6/30/2020; and

      43.3    0.5% equity for Cooper and Weinstein if Agrify achieved $10 million booked revenue before 6/30/2020 (collectively, "Special Bonus Plan").

44.     That same email also stated that if Cooper and Weinstein did not sign the Offer Letter that same day, there would be no future for them with Agrify.

45.     Relying on the Offer Letter and Special Bonus Plan from Agrify's CEO, Cooper and Weinstein signed their Offer Letters the evening of January 23, 2020.

46.     Agrify never provided Cooper or Weinstein with a different or additional commission agreement.

47.     Cooper and Weinstein based their respective decisions to join and work for Agrify in reliance on the "Special Bonus Plan."

AMENDED COMPLAINT - 7
Case No. 2:21-cv-00061-RSL-JRC

**G.    "Booked Revenue" Under the Special Bonus Plan Included the Value of All Purchase Orders.**

48.    On information and belief, Agrify prepares its accounting in accordance with generally accepted accounting principles (GAAP).

49.    Agrify's vertical farming units (AVFU) product is highly specialized equipment that requires a lengthy sales, design, permitting, and implementation cycle.  This includes the necessary involvement of the customer and their multiple external third parties (*e.g.*, architects, engineers, local municipalities, and contractors) before the AVFU can be delivered.

50.    Given the complexity of Agrify's product cycle, it has historically taken a minimum of 12 months from when a customer signs a product purchase order to when the performance obligations are satisfied by transferring control of the product to the customer.  Therefore, revenue is generally not recognized as GAAP revenue, *i.e.*, recognized revenue, until 12 months (or more) after a purchase order is booked.

51.    Although not defined in the Special Bonus Plan, "booked revenue" was understood to mean the total economic value that Agrify has under contract, *i.e.*, the value of executed purchase orders, as opposed to recognized revenue when the product is delivered.

52.    The Special Bonus Plan promised to Cooper and Weinstein was consistent with the manner in which Agrify's compensated other commissioned employees. Specifically, Agrify Sales Team members earned commission based on secured purchase orders or deposits without full payment from the customer, *i.e.*, "booked revenue."

**H.    Based on Agrify's Performance and the Terms of the Special Bonus Plan, Cooper and Weinstein Were Entitled to 1% Commissions and 0.5% Equity in Agrify.**

53.    Based on information and belief, Agrify procured and executed purchase orders in excess of $10 million before June 30, 2020, which automatically extended the cash commission plan through the end of 2020.

AMENDED COMPLAINT - 8
Case No. 2:21-cv-00061-RSL-JRC

**Corr|Downs PLLC**
100 WEST HARRISON STREET
SUITE N440
SEATTLE, WA 98119
206.962.5040

54.     Based on information and belief, by March 31, 2020, Agrify's own Q1 board PowerPoint presentation document indicated that it had booked purchase orders and SaaS contracts valued at approximately $19 million:

54.1   1401 Case Growing: $11,144,000 ($8,612,000 in Equipment and $2,532,000 in SaaS contract value);

54.2   Phytotherapy: $7,156,900 ($5,654,500 in Equipment and $1,502,400 in SaaS contract value); and

54.3   Vertical Growth First Phase: $410,800 ($326,000 in Equipment and $76,800 in SaaS contract value).

55.     On information and belief, additional purchase orders were procured during the first half of 2020 but not officially booked until Q3 or later.

56.     Agrify's December 2020 S-1 filing with the Securities and Exchange Commission references $36.9 million in booked purchase orders for the first nine months of 2020, and Agrify's January 2020 S-1A filing references an increase to $59.3 million in booked purchase orders or purchase commitments by December 31, 2020.

57.     Cooper and Weinstein were responsible for procuring and enabling a substantial portion of the purchase orders and purchase commitments booked by Agrify in 2020.  Many of the purchase orders booked by Agrify were facilitated via Cooper and Weinstein's knowledge, expertise, and/or relationship and credibility with clients and other industry personnel.

58.     Cooper and Weinstein performed all of their obligations and duties under their employment agreements with Agrify.

59.     Because Agrify surpassed the $10 million milestone well before June 30, 2020, it became clear that Agrify would have to make good on the Special Bonus Plan agreements with Cooper and Weinstein, including extension of the period for 1% commission and an award of 0.5% equity in Agrify to each.

AMENDED COMPLAINT - 9
Case No. 2:21-cv-00061-RSL-JRC

CORR|DOWNS PLLC
100 WEST HARRISON STREET
SUITE N440
SEATTLE, WA 98119
206.962.5040

**I.      To Further Induce Acceptance of Employment, Agrify Also Promises Cooper and Weinstein Participation in Agrify's ESOP.**

60.     Cooper and Weinstein's January 20, 2020 Offer Letters with Agrify also granted them shares in Agrify via an ESOP that was to be instituted within thirty (30) days of February 1, 2020.

61.     In violation of Weinstein's Offer Letter, Agrify never granted him shares under the ESOP within thirty (30) days.

62.     As Vice President, Weinstein understood that he would be granted stock options commensurate with the other TriGrow senior executives hired by Agrify at the VP level, which on information and belief was an initial grant of approximately 85,000 stock options.

63.     On May 6, 2020, Agrify issued 63,593 stock options to Cooper under the ESOP, which were subsequently cancelled just over a month later when Agrify terminated him.

64.     Agrify initially terminated Weinstein on March 20, 2020, as part of a "Reduction in Force," but it promptly rehired him in April 2020.  Agrify's rehire offer letter included 33,916 non-qualified stock options. But that grant was subsequently cancelled just weeks later when Agrify terminated Weinstein.

**J.      Agrify Terminates Cooper and Weinstein Eleven Days Prior to the End of the First Commission Term and Withholds Wages and Equity Due Pursuant to the Special Bonus Plan.**

65.     Instead of compensating Cooper and Weinstein as agreed under the Special Bonus Plan, Agrify willfully, intentionally, and/or knowingly withheld commissions and equity due to them and wrongfully terminated them on June 19, 2020—just eleven (11) days before the first commission term ended on June 30, 2020.

66.     Between April and June 2020, Cooper complained to Agrify that he was not being paid all amounts due under his agreed-upon compensation plan in violation of the statutory requirement to pay wages due.  Specifically, Cooper complained to Raymond Chang, Matthew

AMENDED COMPLAINT - 10
Case No. 2:21-cv-00061-RSL-JRC

CORR|DOWNS PLLC
100 WEST HARRISON STREET
SUITE N440
SEATTLE, WA 98119
206.962.5040

Liotta, and Jennifer Liotta on numerous occasions regarding his commission and equity compensation.

67.     On information and belief, Cooper and Weinstein are each entitled to at least $593,000 in commission through 2020 as well as 0.5% equity interest on a fully diluted basis in Agrify.

68.     Agrify terminated Cooper and Weinstein to avoid paying them earned wages, including commission and equity.

69.     Agrify knowingly and/or intentionally did not pay Cooper and Weinstein all wages due, including commission and equity, at the conclusion of their employment.

70.     To date, Agrify has not paid Cooper and Weinstein wages due, including commission and equity.

71.     As a result of Agrify's willful withholding of Cooper and Weinstein's wages, Agrify has been unjustly enriched to the detriment of Cooper and Weinstein.

72.     As a direct, foreseeable, and proximate result of Agrify's actions, Cooper and Weinstein have suffered lost wages, lost opportunities, emotional distress, incurred attorneys' fees and litigation costs, and other damages to be determined at trial.

## IV.   CLAIMS
### FIRST CAUSE OF ACTION:
### VIOLATION OF WASHINGTON'S WAGE WITHHOLDING STATUTE
### RCW 49.52 *et seq.*

73.     Plaintiff(s) re-alleges and incorporates herein all preceding paragraphs in this Complaint as though set forth in full herein.

74.     RCW 49.52.050(2) prohibits an employer from willfully and intentionally withholding wages due to an employee.

75.     Upon the conclusion of the employment relationship an employer must pay its employee all wages.

CORR|DOWNS PLLC
100 WEST HARRISON STREET
SUITE N440
SEATTLE, WA 98119
206.962.5040

76.     Agrify was contractually required to pay Cooper all commissions, equity, and shares due under the Offer Letter and Special Bonus Agreement.  Such commissions, equity, and shares constituted wages due to Cooper.

77.     During the course of Cooper's employment with Agrify, Agrify met the benchmarks that obligated Agrify to award Cooper with the commission and equity as set forth in Cooper's Offer Letter and Special Bonus Agreement.

78.     At the conclusion of Cooper's employment relationship, Agrify did not pay Cooper all wages due.

79.     To date, Agrify has not paid Cooper all wages due.

80.     Agrify wrongfully terminated Cooper's employment eleven (11) days before the expiration of the initial commission period in order to withhold wages, including commission and equity.

81.     RCW 49.52.070 provides in relevant part that any employer who violates the provisions of RCW 49.52.050 shall be liable for double damages, attorneys' fees, and costs.

82.     As a result of Agrify's unlawful withholding of wages due to Cooper, he has been damaged in an amount to be determined at trial.  Cooper will also seek an award pursuant to RCW 49.52.070 for double damages and his attorneys' fees and costs.

### THIRD CAUSE OF ACTION:[2]
### BREACH OF CONTRACT RE COOPER'S EMPLOYMENT AGREEMENT

83.     Plaintiff(s) re-alleges and incorporates herein all preceding paragraphs in this Complaint as though set forth in full herein.

84.     On January 23, 2020, Cooper and Agrify entered into an employment agreement whereby Cooper would serve as Founder & Chief Evangelist in exchange for certain commission and equity set forth in Cooper's Offer Letter and Special Bonus Agreement.

---

[2] The Second Cause of Action for Violation of Georgia's Wage Withholding Statute, O.C.G.A. § 34 *et al.*, was dismissed on July 27, 2021 via the Court's Order Adopting in Part Report and Recommendation.  Dkt. #25.

CORR|DOWNS PLLC
100 WEST HARRISON STREET
SUITE N440
SEATTLE, WA 98119
206.962.5040

85.     During Cooper's employment with Agrify, Agrify met the benchmarks that obligated Agrify to award Cooper with the commission and equity as set forth in Cooper's Offer Letter and Special Bonus Agreement.

86.     Cooper performed all of his obligations and duties under the employment agreement with Agrify.

87.     Under Washington State law, Agrify breached its employment agreement with Cooper by failing to deliver commission and equity as set forth in Cooper's Offer Letter and Special Bonus Agreement.

88.     As a direct, foreseeable, and proximate result of Agrify's breach of contract, Cooper suffered and continues to suffer damages in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION:
## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING RE COOPER

89.     Plaintiff(s) re-alleges and incorporates herein all preceding paragraphs in this Complaint as though set forth in full herein.

90.     On January 23, 2020, Cooper and Agrify entered into an employment agreement whereby Cooper would serve as Founder & Chief Evangelist in exchange for certain commission and equity set forth in Cooper's Offer Letter and Special Bonus Agreement.

91.     During the course of Cooper's employment, Agrify obtained the full benefit of its bargain and Cooper performed all of his obligations and duties under the employment agreement.

92.     Despite Cooper's performance, Agrify wrongfully terminated Cooper's employment in order to willfully withhold wages due and deprive him of the full benefit of the contract.

93.     Under Washington State law, Agrify's actions constitute a breach of the duty of good faith and fair dealing.

94.     As a direct, foreseeable, and proximate result of Agrify's actions, Cooper has suffered damages to be determined at trial.

AMENDED COMPLAINT - 13
Case No. 2:21-cv-00061-RSL-JRC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

### FIFTH CAUSE OF ACTION:
### BREACH OF CONTRACT RE WEINSTEIN'S EMPLOYMENT AGREEMENT

95.     Plaintiff(s) re-alleges and incorporates herein all preceding paragraphs in this Complaint as though set forth in full herein.

96.     Weinstein and Agrify entered into an employment agreement whereby Weinstein would serve as Vice President of Business Development in exchange for certain commission and equity set forth in Weinstein's Offer Letter and Special Bonus Agreement.

97.     During the course of Weinstein's employment with Agrify, Agrify met the benchmarks that obligated Agrify to award Weinstein with the commission and equity as set forth in Weinstein's Offer Letter and Special Bonus Agreement.

98.     Weinstein performed all of his obligations and duties under the employment agreement with Agrify.

99.     Under Georgia law, Agrify breached its employment agreement with Weinstein by failing to deliver commission and equity, to include 0.5% equity as commission compensation under the Special Bonus Plan and an ESOP grant under Weinstein's Offer Letter.

100.    As a direct, foreseeable, and proximate result of Agrify's breach of contract, Weinstein suffered and continues to suffer damages in an amount to be proven at trial.

### SIXTH CAUSE OF ACTION:
### BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING RE WEINSTEIN

101.    Plaintiff(s) re-alleges and incorporates herein all preceding paragraphs in this Complaint as though set forth in full herein.

102.    On January 23, 2020, Weinstein and Agrify entered into an employment agreement whereby Weinstein would serve as Vice President of Business Development in exchange for certain commission and equity set forth in Weinstein's Offer Letter and Special Bonus Agreement.

103.    During the course of Weinstein's employment, Agrify obtained the full benefit of its bargain and Weinstein performed all of his obligations and duties under the employment agreement.

AMENDED COMPLAINT - 14
Case No. 2:21-cv-00061-RSL-JRC

**CORR|DOWNS PLLC**
100 WEST HARRISON STREET
SUITE N440
SEATTLE, WA 98119
206.962.5040

104.    Despite Weinstein's performance, Agrify wrongfully terminated Weinstein's employment in order to willfully withhold wages due and deprive him of the full benefit of the contract.

105.    Under Georgia law, Agrify's actions constitute a breach of the duty of good faith and fair dealing.

106.    As a direct, foreseeable, and proximate result of Agrify's actions, Weinstein has suffered damages to be determined at trial.

## SEVENTH CAUSE OF ACTION:
## BREACH OF CONTRACT RE WEINSTEIN'S 5% INTEREST IN AGRIFY

107.    Plaintiff(s) re-alleges and incorporates herein all preceding paragraphs in this Complaint as though set forth in full herein.

108.    Weinstein and Agrify, then Agrinamics, entered into an agreement whereby Weinstein would serve as Chief Business Development Officer in exchange for 5% equity in both Agrify and TriGrow.

109.    Agrify then transferred Weinstein's employment to TriGrow.  Before and after transferring Weinstein to TriGrow, Agrify reaffirmed its promise that it would provide Weinstein the promised 5% equity in Agrify.

110.    During Weinstein's employment with Agrify and TriGrow, Weinstein performed all of his obligations and duties.

111.    Under Georgia law, Agrify breached its agreement with Weinstein by failing to deliver the promised 5% equity in Agrify.

112.    As a direct, foreseeable, and proximate result of Agrify's breach of contract, Weinstein suffered and continues to suffer damages in an amount to be proven at trial.

AMENDED COMPLAINT - 15
Case No. 2:21-cv-00061-RSL-JRC

**Corr|Downs PLLC**
100 WEST HARRISON STREET
SUITE N440
SEATTLE, WA 98119
206.962.5040

## EIGHTH CAUSE OF ACTION:
## BREACH OF CONTRACT RE WEINSTEIN'S RELEASE

113.    Plaintiff(s) re-alleges and incorporates herein all preceding paragraphs in this Complaint as though set forth in full herein.

114.    On or about January 23, 2020, as part of the Merger and in effort to protect Agrify from future claims, Agrify required Weinstein to sign a Release of Claims Agreement ("the Release") which purported to release Agrify and TriGrow from any potential liability related to Weinstein.

115.    As consideration for the Release, Agrify promised to employ Weinstein "under the terms stated in an offer letter to be provided herewith," a direct reference to the Offer Letter and Special Bonus Plan.

116.    Agrify's failure to honor the terms of the Offer Letter and Special Bonus Plans amounts to a material breach of the Release and excuses further performance by Weinstein.

117.    As a direct, foreseeable, and proximate result of Agrify's breach, rescission of the Release is the appropriate remedy.

## NINTH CAUSE OF ACTION:
## FRAUD IN THE INDUCEMENT REGARDING WEINSTEIN'S RELEASE

118.    Plaintiff(s) re-alleges and incorporates herein all preceding paragraphs in this Complaint as though set forth in full herein.

119.    Agrify made false representations to Weinstein that if he signed the Release of Claims Agreement, Agrify would employ him under the terms of the Offer Letter and Special Bonus Plans.

120.    Agrify knew or believed the representation to be false as evidenced by Agrify's failure to honor the terms of the Offer Letter and Special Bonus Plan.

121.    In making these false representations, Agrify intended to induce Weinstein to execute the Release.

AMENDED COMPLAINT - 16
Case No. 2:21-cv-00061-RSL-JRC

Corr|Downs PLLC
100 WEST HARRISON STREET
SUITE N440
SEATTLE, WA 98119
206.962.5040

122.    Weinstein justifiably relied upon Agrify's false representations and on or about January 23, 2020, he executed the Release.

123.    As a direct, foreseeable, and proximate result of Agrify's fraudulent inducement, Weinstein is entitled to rescission of the Release under both Georgia and Massachusetts law.

## TENTH CAUSE OF ACTION:
## UNJUST ENRICHMENT RE COOPER

124.    Plaintiff(s) re-alleges and incorporates herein all preceding paragraphs in this Complaint as though set forth in full herein.

125.    On January 23, 2020, Cooper and Agrify entered into an employment agreement whereby Cooper would serve as Founder & Chief Evangelist in exchange for certain commission and equity set forth in Cooper's Offer Letter and Special Bonus Agreement.

126.    Agrify received the benefit of Cooper's employment without compensating him wages due, including commission and equity.

127.    These circumstances make it unjust for Agrify to retain the benefit of Cooper's employment without compensation of wages.

128.    Under Washington law, Cooper is entitled to compensation due under his Offer Letter and Special Bonus Agreement.

129.    As a direct, foreseeable, and proximate result of Agrify's actions, Cooper has suffered damages to be determined at trial.

## ELEVENTH CAUSE OF ACTION:
## UNJUST ENRICHMENT RE WEINSTEIN

130.    Plaintiff(s) re-alleges and incorporates herein all preceding paragraphs in this Complaint as though set forth in full herein.

131.    On January 23, 2020, Weinstein and Agrify entered into an employment agreement whereby Weinstein would serve as Vice President of Business Development in exchange for certain commission and equity set forth in Weinstein's Offer Letter and Special Bonus Agreement.

CORR|DOWNS PLLC
100 WEST HARRISON STREET
SUITE N440
SEATTLE, WA 98119
206.962.5040

132.    Agrify received the benefit of Weinstein's employment without compensating him wages due, including commission and equity.

133.    These circumstances make it unjust for Agrify to retain the benefit of Weinstein's employment without compensation of wages.

134.    Under Georgia law, Weinstein is entitled to compensation due under his Offer Letter and Special Bonus Agreement.

135.    As a direct, foreseeable, and proximate result of Agrify's actions, Weinstein has suffered damages to be determined at trial.

## TWELFTH CAUSE OF ACTION:
## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY RE COOPER

136.    Plaintiff(s) re-alleges and incorporates herein all preceding paragraphs in this Complaint as though set forth in full herein.

137.    An employer is liable for wrongful termination if the discharge may have been motivated by reasons that contravene a clear mandate of public policy.

138.    Washington has a strong policy in favor of payment of wages due to employees, including under RCW 49.52 *et seq.*

139.    Agrify was contractually required to pay Cooper all commissions and equity due under the Offer Letters and Special Bonus Agreement.  Such commissions and equity constituted wages due to Cooper.

140.    Agrify's failure to pay Cooper all wages due constitutes employer misconduct.

141.    Between April and June 2020, Cooper complained to Agrify that he was not being paid all amounts due under his agreed-upon compensation plan in violation of the statutory requirement to pay wages due.  Specifically, Cooper complained to Raymond Chang, Matthew Liotta, and Jennifer Liotta on numerous occasions regarding his commission and equity compensation ("public policy linked conduct").

AMENDED COMPLAINT - 18
Case No. 2:21-cv-00061-RSL-JRC

**Corr|Downs PLLC**
100 WEST HARRISON STREET
SUITE N440
SEATTLE, WA 98119
206.962.5040

142.    Cooper's public policy linked conduct was a substantial factor motivating Agrify to terminate Cooper's employment in June 2020.

143.    Agrify is unable to offer an overriding justification for Cooper's termination.

144.    Agrify terminated Cooper to avoid paying the wages due to him.  This retaliation and unlawful withholding of Cooper's wages violated RCW 49.52 *et seq.* and gives rise to a claim for wrongful termination against public policy.  Cooper is not prohibited from asserting a claim for wrongful termination in violation of public policy by the existence of any exclusive, alternative statutory remedies, regardless of whether or not such statutory remedies are adequate.

145.    As a direct, foreseeable, and proximate result of this wrongful termination, Cooper suffered and continues to suffer damages in an amount to be proven at trial.

146.    Cooper's damages include, but are not limited to, lost wages and opportunities (including salary, commissions, equity interests, and the value of ESOP grants), attorneys' fees, litigation costs, and emotional distress.

### THIRTEENTH CAUSE OF ACTION:
### FRAUD IN THE INDUCEMENT REGARDING THE STOCK OPTION CANCELLATION AGREEMENT

147.    Plaintiff(s) re-alleges and incorporates herein all preceding paragraphs in this Complaint as though set forth in full herein.

148.    Agrify orally made false representations to Weinstein that if he extinguished his ESOP interest via the Stock Option Cancellation Agreement, Agrify would "mirror" his interest in TriGrow and provide him a 0.5% equity interest in Agrify to make up for the cancellation of his TriGrow ESOP.

149.    Agrify knew or believed the representation to be false or had knowledge that it had an insufficient basis for making this representation.

150.    In making these false representations, Agrify intended to induce Weinstein to consent to the Stock Option Cancellation Agreement.

AMENDED COMPLAINT - 19
Case No. 2:21-cv-00061-RSL-JRC

**Corr|Downs PLLC**
100 WEST HARRISON STREET
SUITE N440
SEATTLE, WA 98119
206.962.5040

151.     Weinstein justifiably relied upon Agrify's false representations and on December 31, 2019, he executed the Stock Option Cancellation Agreement.

152.     As a direct, foreseeable, and proximate result of Agrify's fraudulent inducement, Weinstein has suffered damages in an amount to be determined at trial and he is entitled to rescission of the Stock Option Cancellation Agreement under both Georgia and Nevada law.

### FOURTEENTH CAUSE OF ACTION:
### GEORGIA PROMISSORY ESTOPPEL

153.     Plaintiff(s) re-alleges and incorporates herein all preceding paragraphs in this Complaint as though set forth in full herein.

154.     Agrify orally made false representations to Weinstein that if he extinguished his ESOP interest via the Stock Option Cancellation Agreement, Agrify would "mirror" his interest in TriGrow and provide him a 0.5% equity interest in Agrify to make up for the cancellation of his TriGrow ESOP.

155.     Agrify reasonably expected that its promise would cause Weinstein to justifiably rely on those representations.

156.     Weinstein did, in fact, rely to his detriment on Agrify's false promises related to the Stock Option Cancellation Agreement.

157.     Under Georgia law, Weinstein is entitled to reliance damages related to the unfulfilled promises.

158.     As a direct, foreseeable, and proximate result of Agrify's actions, Weinstein has suffered damages to be determined at trial.

### V.   REQUEST FOR RELIEF

159.     All general and special damages sustained by Plaintiffs including, but not limited to, economic damages, backpay, front pay, a gross-up for negative tax consequences, and emotional distress damages;

160.     Punitive damages pursuant to statute;

AMENDED COMPLAINT - 20
Case No. 2:21-cv-00061-RSL-JRC

161. Reinstatement;

162. Rescission of Weinstein's Release of Claims Agreement;

163. Interest calculated at the maximum amount allowable by law, including pre- and post-judgment interest;

164. Costs and disbursements pursuant to statute;

165. Reasonable attorneys' fees as allowed by law; and

166. Any and all additional economic or equitable relief allowed by law or equity as the Court deems appropriate.

DATED this 17th day of August, 2021.

CORR|DOWNS PLLC


By _s/ Jacob M. Downs_
    Jacob M. Downs, WSBA No. 37982
    Jacqueline Middleton, WSBA No. 52636
    100 W. Harrison St., Suite N440
    Seattle, WA 98119
    Telephone: 206.962.5040
    jdowns@corrdowns.com
    jmiddleton@corrdowns.com
Attorneys for Plaintiffs

AMENDED COMPLAINT - 21
Case No. 2:21-cv-00061-RSL-JRC

CORR|DOWNS PLLC
100 WEST HARRISON STREET
SUITE N440
SEATTLE, WA 98119
206.962.5040

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury under the laws of the State of Washington and the

United States that on August 17, 2021, I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system which will send notification of such filing to the following:

William B. Stafford, WSBA #39849
Perkins Coie LLP
1201 Third Ave, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
WStafford@perkinscoie.com

Mark J. Goldberg, *Pro Hac Vice*
John D. Taliaferro, *Pro Hac Vice*
Loeb & Loeb LLP
345 Park Avenue
New York, NY 10154
Telephone: 212.407.4925
mgoldberg@loeb.com
jtaliaferro@loeb.com

DATED this 17th day of August, 2021.

*s/ Danna Hutchings*
Danna Hutchings
Legal Assistant

AMENDED COMPLAINT - 22
Case No. 2:21-cv-00061-RSL-JRC

**Corr|Downs PLLC**
100 WEST HARRISON STREET
SUITE N440
SEATTLE, WA 98119
206.962.5040